# ORIGINAL

FILED

APR 10 2002

PER _____ JB
HARRISBURG, PA   DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LLOYD RAHN,

        Plaintiff

    v.

BRODERSON MANUFACTURING CORPORATION and CARSON CRANE, INC.,

        Defendants

NO. 1:01-CV-033
JUDGE YVETTE KANE

CIVIL ACTION – LAW

JURY TRIAL DEMANDED

### BRIEF IN SUPPORT OF PLAINTIFF'S
### MOTION TO DISMISS, WITHOUT PREJUDICE, PURSUANT TO F.R.C.P 41

## I.    FACTUAL AND PROCEDURAL HISTORY

This case is currently before the Court on the Motion of the Plaintiff, Lloyd Rahn, to voluntarily dismiss the pending federal action against both Defendants, Broderson Manufacturing Corporation and Carson Crane, Inc., without prejudice. Carson Crane objects to the relief sought, and Broderson is still considering its position.

Lloyd Rahn was seriously injured in an accident at Baker Refractories in York, Pennsylvania, on March 22, 2000. Mr. Rahn was operating a crane manufactured by Broderson when the crane's down haul weight passed through the top of the boom and its protective anti two-block device, traveled over the boom tip, and then fell through the crane cab skylight, hitting Mr. Rahn with great force.

Suit against Broderson was initiated in federal court on January 10, 2001, alleging that Broderson manufactured the crane with inadequate safety devices, rendering the crane defective and Broderson strictly liable for Rahn's injuries. A count was also asserted against Broderson for negligence.

The case was assigned to Judge Rambo, but before the scheduling conference was held, Plaintiff filed a motion to amend the Complaint to join, as a party defendant, Carson Crane, Inc. This motion was filed because in its Answer, Broderson alleged that Mr. Rahn's injuries may have been the proximate result of acts or omissions of third parties, including Carson Crane. The court granted the motion, Carson Crane was added as a defendant, and an Amended Complaint filed on May 2, 2001. The case management conference was subsequently held and an order issued on November 9, 2001, placing this case on Judge Kane's October 2002 trial list.

The parties have engaged in both written discovery and depositions. A number of witnesses were deposed; these witnesses included not just employees of the corporate defendants, but other individuals at the accident scene, including employees of Aycock, Inc., a contractor using the subject Broderson crane and the services of Mr. Rahn to fulfill a contract with Baker. During discovery, Plaintiff's counsel obtained information that justified joining Aycock, Inc., its supervisor and employee, Mark Kreiner, and several companies related to Modern Equipment Sales and Rental Company as Defendants.

The factual predicate justifying the joinder is outlined, in detail, in a new Complaint filed in Dauphin County Common Pleas Court, attached hereto as Exhibit "A." Briefly, the new Complaint alleges that Aycock, through its supervisor, actually knew of a problem with the crane's safety system, and attempted to test it before Mr. Rahn was injured. Unfortunately, the Aycock employee performed the test incorrectly, thereby permitting Mr. Rahn to operate the crane in its unsafe condition.

Evidence disclosed during discovery also suggested that Modern Equipment Company was the actual owner/lessor of the crane. The testimony of Robert Jenkins, a Broderson engineer, strongly suggested that the crane's safety systems had been inoperable for a lengthy

period of time, thereby making Modern Equipment Company potentially liable to the Plaintiff under a number of legal theories, outlined in Counts 4, 5, 6, and 7 of the state court action. These theories of liability are not limited to Modern Equipment Company's status as another entity in the chain of product distribution, but assert independent claims of negligence and breach of contract arising out of Pennsylvania's Common Law and Restatement (2nd) of Torts, § 381 *et seq.*

Some or all of the new defendants are residents of the Commonwealth of Pennsylvania, or have their principle place of business in the Commonwealth of Pennsylvania, and are not susceptible to federal diversity jurisdiction. Pursuant to 28 U.S.C. § 1441(b), there must be complete diversity of citizenship between the plaintiff and all named defendants for the federal court to obtain jurisdiction. The only exception occurs if the added defendant actually should be realigned with the plaintiff's interests; but that is certainly not, nor will it be, the case here. *See, Est. of Martin v. Universal Underwriters*, 676 F. Supp. 77 (E.D. Pa. 1987).

Plaintiff filed a new complaint, in Dauphin County court, naming both the diverse and non-diverse defendants in one action. Plaintiff believes that the interest of judicial economy and the ability to determine the rights and responsibilities of all parties fairly are best served in a single forum.

## II.     SHOULD THE COURT PERMIT PLAINTIFF TO VOLUNTARILY DISMISS, WITHOUT PREJUDICE, THE PENDING FEDERAL ACTION UNDER FRCP 41?

### III.   **ARGUMENT**

Plaintiff should be permitted to dismiss the case, without prejudice, pursuant to F.R.C.P. 41. The only provision in the Court's order necessary for the protection of Defendants is one that permits the use, among the original parties, of discovery taken in the federal action in the state court litigation.

F.R.C.P. 41 provides that an action can be voluntarily dismissed, without prejudice, by stipulation of all parties, or by order of court upon such terms and conditions as the court deems proper. As a general proposition, the Court should grant a motion to voluntarily dismiss, without prejudice, unless doing so would be unreasonably harm to the Defendants. Even then, the Court should grant the dismissal with conditions that remove any resulting prejudice to the Defendants. *See, Kovalic v. DEC International*, 855 F.2d 471 (7th Cir. 1988); *American National Bank and Trust Co. of Sopula v. BIC Corp.*, 931 F.2d 1411 (10th Cir. 1991); *Jaskot v. Brown*, 167 F.R.D. 372 (S.D. N.Y. 1996); *Germain v. Semco*, 79 F.R.D. 85 (E.D. N.Y. 1978). If the conditions that the court imposes are too onerous, plaintiff has the option to withdraw the dismissal motion. *See, Mortgage Guaranty Ins. Co. v. Carlyn Co.*, 904 F.2d 298 (C.A.S. 1990).

It is important to note that prejudice means legal prejudice, not just the prospect of a second lawsuit, or the fact that the Plaintiff may obtain some tactical advantage from the voluntary dismissal. For example, the fact that a Plaintiff intends to renew an action in state court is not sufficient reason to deny a motion to dismiss. The Court is under no obligation to guarantee the defendant a federal forum. *See, Kovalic, Sopula,* and *Jaskot, supra.* While there is no strict definition of what constitutes legal prejudice, the considerations include whether the Plaintiff has or will soon be affected by an adverse order, e.g. for summary judgment or sanctions, whether a second litigation will unreasonably duplicate effort and expense incurred in

the first lawsuit, whether the first litigation is far advanced and trial pending, and whether the federal court will be required to retain jurisdiction over any ancillary aspect of the case, thereby requiring dual litigation in two forums. *See, Jaskot,* 167 F.R.D. at 373.

In this case, the dismissal should be granted, without prejudice, because it will serve to advance many legitimate interests of both the court and the parties, without prejudicing either Broderson or Carson Crane. First, the desire to proceed in state court is motivated by Plaintiff's inability to join all necessary parties in federal court. Plaintiff does not seek to move this case into state court to gain an unfair tactical advantage.

Second, the motion has been asserted in a timely manner, not at a point when a great deal of litigation effort would be wasted if the case moves to a different jurisdiction. At the present time the following has occurred:

1.    The parties have satisfied the submission requirements of Rule 26;

2.    A case management conference was held, leading to a plan and order that better defines the issues, reveals witnesses and documents, and sets deadlines for the completion of the litigation; and

3.    Written discovery was served and answered, and the depositions of six witnesses taken.

All of the document submissions, and responses to written discovery, can simply be utilized by the current parties as if taken in the state court action. Similarly, the parties to the current litigation should be permitted to use the depositions taken in this federal case in the new state court action. Under Pa.R.C.P. 4020, "at the trial, any part or all of the deposition, so far as admissible under the rules of evidence, may be used against any party who is present or represented at the taking of the deposition . . ." Thus, if the Court's order of dismissal indicates

that the discovery, including depositions, taken in the federal action shall have the same force and effect in a second litigation as if taken there, the discovery may be used as provided in Pa.R.C.P. 4020.

It is true that the case management plan and conference is unique to the federal court proceeding. However, the plan serves to sharpen the issues, reveal the names of witnesses, and identity important documents. For that reason, it substitutes for discovery that is actually more cumbersome and costly if conducted under the state rules of civil procedure. In short, Plaintiff believes that the discovery taken to date is fully useable in a state court action and need not be duplicated. While the new parties may conduct their own discovery against Broderson and Carson Crane, they would likely do so regardless of whether the federal action is dismissed.

A third factor favoring dismissal is that Broderson and Carson Crane will almost certainly be joined into the state action by the new defendants, anyway. The nature of Plaintiff's theories of liability are such that Modern Equipment Company and Aycock, Inc. will seek contribution or indemnity against the manufacturer of the crane, Broderson, and the crane inspector, Carson Crane. The liability facts arise from a common nucleus of events in which the state court and federal defendants all participated. The consequence of refusing a dismissal is that Broderson and Carson Crane will defend not one, but two actions. The cost to these defendants, and the burden on judicial resources, will thereby be amplified, not reduced.

A fourth reason for permitting dismissal is that with all defendants present in one litigation, their respective positions with regard to the Plaintiff's claims and their own exposure for indemnity and contribution can be most accurately appreciated. This makes resolution of all claims and defenses among all parties, by way of settlement, more likely than if the cases proceed in separate forums. Dual litigation also leads to difficulties not easily addressed in either

federal or state court.  For example, if the federal case is tried first, and Plaintiff prevails, a jury will award monetary damages.  The effect of the federal jury's evaluation of Plaintiff's damages in a later state court trial is problematic.  Of course, if Broderson and Carson Crane win the federal action, that does not end their involvement as litigants, because the federal defense verdict would not extinguish all the contribution and indemnity claims that Aycock, Inc. and Modern Equipment Company could assert against them in state court.

Adjudication in a single forum also avoids inconsistent interpretation of state law.  Both the federal and state court will, at some point, be asked to resolve issues of substantive state law.  Neither court will be bound by the legal interpretations of the other court.

Finally, it is obvious that Plaintiff has not filed this motion in order to avoid the adverse effect of a pending motion.  No motion for dispositive relief or sanctions has been filed by Broderson or Carson Crane.

## IV.    **CONCLUSION**

The Court should grant Plaintiff's motion to voluntarily dismiss as to all Defendants, without prejudice.  Plaintiff is filing this motion for a proper purpose and in a timely manner.  The Defendants will not be prejudiced, since the litigation effort expended to date can be fully utilized by the current parties in the state court action.  The only condition required to assure this is that the Court order that written discovery and depositions taken in the federal court action have, among the current parties, the same effect as if conducted in state court.

Taking this approach avoids many difficulties.  It avoids conflicting legal interpretations by different courts, inconsistent damage awards, compelling the current Defendants to actually defend in more than one forum, and the imposition of additional and unnecessary demands upon judicial resources.

Respectfully submitted,

ANGINO & ROVNER, P.C.

Joseph M. Melillo, Esquire
Attorney I.D. No. 26211
4503 North Front Street
Harrisburg, PA  17110
(717) 238-6791

Attorney for Plaintiff

Date:   April 9, 2002

A

LLOYD RAHN,

         Plaintiff

   v.

BRODERSON MANUFACTURING CORPORATION, CARSON CRANE, INC., MODERN GROUP LTD., MODERN EQUIPMENT SALES AND RENTAL COMPANY, MODERN HILIFT EQUIPMENT COMPANY, AYCOCK, INC., MARK KRINER, MAGARO, INC., and AYCOCK, INC. and MAGARO, INC. t/d/b/a AYCOCK-MAGARO CONSTRUCTORS JOINT VENTURE,

         Defendants

IN THE COURT OF COMMON PLEAS
DAUPHIN COUNTY, PENNSYLVANIA

NO.

*1287-CV-2002-CV*

CIVIL ACTION – LAW
JURY TRIAL DEMANDED

## COMPLAINT

1.    Plaintiff Lloyd Rahn is an adult individual who resides in Dillsburg, York County, Pennsylvania.

2.    Defendant Broderson Manufacturing Corporation is a corporation organized under the laws of the state of Kansas, which maintains its principle place of business in Lenexa, Kansas.

3.    Defendant Broderson Manufacturing Corporation is engaged in the business of designing, manufacturing, selling, and distributing cranes.

4.    Defendant Modern Equipment Sales and Rental Company is a corporation with a principle place of business in Bristol, Bucks County, Pennsylvania.

5.    Defendant Modern HiLift Equipment Company is a corporation which had a principle place of business in Bristol, Bucks County, Pennsylvania, and then merged with Modern Equipment Rentals, Inc., a corporation that on November 2, 1998 changed its name to Defendant Modern Equipment Sales and Rental Company.

243470.1/JMM\MLB

6.    Defendant Modern Group Ltd. is a corporation with a principle place of business in Bristol, Bucks County, Pennsylvania.

7.    Defendants Modern Equipment Sales and Rental Company, Modern HiLift Equipment Company, and Modern Group Ltd. (hereinafter "Modern Equipment Company") owned an IC-200 crane manufactured by Defendant Broderson that they leased, inspected or caused to be inspected, serviced, and maintained.

8.    Defendant Aycock, Inc. is a corporation with a principle place of business in Hummelstown, Dauphin County, Pennsylvania, which, *inter alia*, erects steel structures and performs rigging work.

9.    Defendant Magaro, Inc. is a corporation with a principle place of business in Hummelstown, Dauphin County, Pennsylvania, which, *inter alia*, erects steel structures and performs rigging work.

10.    Defendant Aycock, Inc. and Magaro, Inc. t/d/b/a Aycock-Magaro Constructors Joint Venture are corporations that own and operate a business that, *inter alia*, performs rigging and erects steel structures.

11.    Defendant Mark Kriner is an adult individual who at all relevant times was employed by Defendants Aycock, Inc. and/or Magaro, Inc. and/or Aycock, Inc. and Magaro, Inc. t/d/b/a Aycock-Magaro Constructors Joint Venture.

12.    Defendant Carson Crane, Inc. is a corporation created under the laws of Maryland with its principle place of business in Maryland.

13.    The facts and occurrences hereinafter related took place on or about March 22, 2000, at approximately 9:00 a.m., at Baker Refractories' quarry facility located in York, York County, Pennsylvania.

14.    At that time and place, Plaintiff Lloyd Rahn was employed as a maintenance mechanic by Baker Refractories.

15.    At that time and place, Plaintiff Lloyd Rahn was operating a model IC200 crane manufactured by Defendant Broderson Manufacturing Corporation, when the crane hoist cable down haul weight passed through the top of the boom anti two-block device, traveled over the boom tip pulley, fell through the crane cab skylight glass, and struck Mr. Rahn.

16.    Mr. Rahn, who was rendered unconscious after being hit in the head by the down haul weight, was taken by ambulance to York Hospital.

17.    Defendant Modern Equipment Sales and Rental Company and/or Modern Group, Inc. owned the subject Broderson crane and had leased it to Baker Refractories at the time of Mr. Rahn's accident.

18.    Defendants Modern Equipment Sales and Rental Company, Modern Hilift Equipment Company, and Modern Group Ltd. maintained and serviced the Broderson crane during the years preceding Mr. Rahn's accident.

19.    These defendants undertook to perform mandatory federal safety inspections, including inspections performed in 1998 and May and July of 1999.

20.    During May and July of 1999, Defendants Modern Equipment Sales and Rental Company and Modern Group Ltd. contracted with Defendant Carson Crane, Inc. to perform the inspections.

21.    The anti two-block mechanism at the tip of the boom extension is subject to damage during the routine moving and use of the crane, a problem known to all named Defendants.

22.     The anti two-block safety mechanism was or may have been severely damaged and compromised at the time of inspection in 1998 and in May and July of 1999, and was not repaired, or adequately repaired, prior to Mr. Rahn's accident.

23.     The Modern Equipment Company corporations had actual knowledge, or should have known, of the compromised condition of the anti two-block safety mechanism during 1998, 1999, and 2000, up until the time of Mr. Rahn's accident.

24.     In March of 2000, Defendant Aycock, or one of its related companies, Magaro, Inc. and Aycock-Magaro Joint Venture, had arranged with Baker Refractories to use the subject Broderson crane to perform a cat walk replacement.

25.     Aycock, Inc., or a related company, and Baker Refractories had entered into a contract for the performance of this work.

26.     In addition to the use of the Broderson crane, Baker Refractories supplied crane operators to work under the direction of an Aycock, or a related company, supervisor.

27.     Two days prior to the subject accident, another Baker crane operator, David Baldwin, was using the subject Broderson crane under the supervision of Aycock, or a related company, supervisor.

28.     The foreman, Mark Kriner, had heard there had been problem with the anti two-block safety device about one month prior to that time.

29.     Mr. Kriner therefore sought to inspect and test the anti two-block safety device, by manually pushing the safety mechanism.

30.     Mr. Kriner was satisfied that the anti two-block safety device worked properly when he perceived what he thought was an audible or visual signal.

31.     The subject Broderson crane does not emit an audible or visual signal as part of the anti two-block safety function.  Rather, if working properly, an electrical circuit is activated that releases hydraulic fluid and shuts down the crane's operations.

32.     Mr. Kriner did not test the anti two-block mechanism properly and thus failed to determine that it was not functioning either then, or two days later when Mr. Rahn was injured.

33.     As a direct and proximate result of the accident, Plaintiff Lloyd Rahn suffered injuries that include, but are not limited to, a skull fracture, a left epidural hematoma, spinous process fractures of C7 and T1, a sinus fracture, spinal cord injury, and left arm paralysis.

34.     As a direct result of the aforesaid injuries, Plaintiff Lloyd Rahn has incurred, and will in the future incur, medical and rehabilitative expenses, and claim is made therefor.

35.     As a direct result of the aforesaid injuries, Plaintiff Lloyd Rahn has been, and in the future will be, subject to humiliation and ridicule as a result of his disability and the scarring resulting from his injuries, and claim is made therefor.

36.     As a direct result of the aforesaid injuries, Plaintiff Lloyd Rahn has undergone, and in the future will undergo, great mental and physical pain and suffering, great inconvenience in carrying out his daily activities, and a loss of life's pleasures and enjoyment, and claim is made therefor.

37.     As a direct result of the aforesaid injuries, Plaintiff Lloyd Rahn has sustained a loss of earnings and loss of earning capacity, and claim is made therefor.

### COUNT I – NEGLIGENCE
#### Lloyd Rahn v. Broderson Manufacturing Corporation

38.     Paragraphs 1 through 37 of this Complaint are incorporated herein by reference.

39.     All of Plaintiff's damages are the direct and proximate result of the negligence of Defendant Broderson Manufacturing Corporation in that it:

a.     designed and manufactured the subject crane in such a fashion that the crane hoist cable down haul weight was able to pass through the top of the boom anti two-block device, and over the boom tip pulley, and fall into the crane's cab;

b.     designed and manufactured the subject crane in such a fashion that the anti two-block device was inadequate to de-energize the controls and prevent the down haul weight from traveling past the device, over the boom tip pulley, and past the safety bar;

c.     designed and manufactured the subject crane in such a fashion that the anti two-block device was located too close to the boom tip pulley safety bar;

d.     designed and manufactured the subject crane in such a fashion that it did not have any means of positive restraint at the pulley tip;

e.     failed to adequately warn through affixed decals, sales literature, or instruction manuals of the danger presented to the crane's operator in the event that the anti two-block device should for any reason fail;

f.     failed to provide adequate warning and instructions concerning how to test the anti two-block device to determine its present condition and function;

g.     failed to equip the subject crane with an audible or visible warning that would serve to alert the crane operator that the down haul weight was dangerously close to the tip of the boom, and that would so alert the crane operator even if the circuitry designed to release hydraulic fluid failed;

h.     failed to equip the crane with a safety cage that would prevent or minimize injury to the crane operator in the event that the down haul weight struck the crane cab;

i.     failed to equip the crane involved in the accident with safety glass that could withstand an impact from the down haul weight;

j.      failed to retrofit the subject crane, or to advertise for customers to retrofit such crane with a safety cage, or similar protective device;

k.      designed and manufactured the subject crane in such a fashion that when the anti two-block device failed, the crane hoist cable down haul weight was able to strike the operator's cab

l.      despite actual knowledge that an accident to the type suffered by Plaintiff Rahn was possible should its anti two-block device fail, Defendant Broderson never sought to warn its dealers, customers, or unit end users that such an accident was possible;

m.      in placing the anti two-block device at the boom tip, Defendant Broderson knew or should have known that the mechanical and electrical mechanism upon which the applicability of the anti two-block device operated was easily and foreseeably damaged when the boom tip contacted other objects, or by the down haul weight itself.

n.      by allowing the two keeper pins at the boom extension's end to be freely removed, and secured to the unit only by a chain, because the chain could catch on objects as the boom was maneuvered, causing the pins to deform and break.

o.      for designing a safety system easily damaged during the foreseeable use of the crane.

WHEREFORE, Plaintiff Lloyd Rahn demands judgment against Defendant Broderson Manufacturing Corporation in an amount in excess of Thirty Thousand ($30,000) Dollars, exclusive of interest and costs, and in excess of any jurisdictional amount requiring compulsory arbitration.

## COUNT II – STRICT LIABILITY
### Lloyd Rahn v. Broderson Manufacturing Corporation

40.      Paragraphs 1 through 37 of this Complaint are incorporated herein by reference.

41.   Defendant Broderson Manufacturing Corporation is strictly liable to Plaintiff Lloyd Rahn under Section 402(a) of the Restatement (Second) of Torts for the damages alleged herein which were proximately caused by a crane which was defective for the following reasons:

a.   designed and manufactured the subject crane in such a fashion that the crane hoist cable down haul weight was able to pass through the top of the boom anti two-block device, and over the boom tip pulley, and fall into the crane's cab;

b.   designed and manufactured the subject crane in such a fashion that the anti two-block device was inadequate to de-energize the controls and prevent the down haul weight from traveling past the device, over the boom tip pulley, and past the safety bar;

c.   designed and manufactured the subject crane in such a fashion that the anti two-block device was located too close to the boom tip pulley safety bar;

d.   designed and manufactured the subject crane in such a fashion that it did not have any means of positive restraint at the pulley tip;

e.   failed to adequately warn through affixed decals, sales literature, or instruction manuals of the danger presented to the crane's operator in the event that the anti two-block device should for any reason fail;

f.   failed to provide adequate warning concerning how to test the anti two-block device to determine its present condition and function;

g.   failed to equip the subject crane with an audible or visible warning that would serve to alert the crane operator that the down haul weight was dangerously close to the tip of the boom, and that would so alert the crane operator even if the circuitry designed to release hydraulic fluid failed;

h.     failed to equip the crane with a safety cage that would prevent or minimize injury to the crane operator in the event that the down haul weight struck the crane cab;

i.     failed to equip the crane involved in the accident with safety glass that could withstand an impact from the down haul weight;

j.     failed to retrofit the subject crane, or to advertise for customers to retrofit such crane with a safety cage, or similar protective device;

k.     designed and manufactured the subject crane in such a fashion that when the anti two-block device failed, the crane hoist cable down haul weight was able to strike the operator's cab

l.     despite actual knowledge that an accident to the type suffered by Plaintiff Rahn was possible should its anti two-block device fail, Defendant Broderson never sought to warn its dealers, customers, or unit end users that such an accident was possible;

m.     in placing the anti two-block device at the boom tip, Defendant Broderson knew or should have known that the mechanical and electrical mechanism upon which the applicability of the anti two-block device operated was easily and foreseeably damaged when the boom tip contacted other objects, or by the down haul weight itself.

n.     by allowing the two keeper pins at the boom extension's end to be freely removed, and secured to the unit only by a chain, because the chain could catch on objects as the boom was maneuvered, causing the pins to deform and break.

o.     for designing a safety system easily damaged during the foreseeable use of the crane.

WHEREFORE, Plaintiff Lloyd Rhan demands judgment against Defendant Broderson Manufacturing Corporation in an amount in excess of Thirty Thousand ($30,000) Dollars,

exclusive of interest and costs, and in excess of any jurisdictional amount requiring compulsory arbitration.

## COUNT III
### Lloyd Rahn v. Carson Crane, Inc.

42.     Paragraphs 1 through 37 are incorporated herein by reference as if set forth in their entirety.

43.     Defendant Carson Crane was contractually obliged to inspect the subject Broderson crane for Defendants Modern Group, Ltd. and Modern Equipment Sales and Rental Company during 1999.

44.     Defendant Carson Crane owed a duty to foreseeable users of the crane to perform the required inspections with due care, and reasonably report and/or repair problems that may cause injury.

45.     In paragraph 48 of Defendant Broderson's Answer to the original federal Complaint, Broderson alleged that the anti two-block safety device was not functioning at the time of Rahn's accident because the trip bar or relay switch were badly damaged and misaligned, an electrical wire in the circuit of the anti two-block safety device was broken and not properly spliced, because the keeper pins installed when the unit was manufactured were then missing from the end of the boom extension.

46.     Broderson's agents contend that these were long-standing problems and should have been discovered during crane inspections performed in 1999.

47.     If true, then Plaintiff's injuries also resulted from the failure of Carson Crane to reasonably exercise its obligation to inspect, report deficiencies, and repair the crane, thereby increasing the risk of injury to the Plaintiff.

WHEREFORE, Plaintiff Lloyd Rahn demands judgment against Defendant Carson Crane, Inc. in an amount in excess of Thirty Thousand ($30,000) Dollars, exclusive of interest and costs, and in excess of any jurisdictional amount requiring compulsory arbitration.

## COUNT IV – STRICT LIABILITY
### Lloyd Rahn v. Modern Equipment Sales and Rental Company and Modern Group Ltd.

48.    Paragraphs 1 through 37 and 41 of this Complaint are incorporated herein by reference.

49.    As the owners and lessors of the subject crane, Defendants Modern Equipment Sales and Rental Company and Modern Group Ltd. are strictly liable to Plaintiff Lloyd Rahn under Section 402(a) of the Restatement (Second) of Torts for the same damages and on the same legal basis as described in paragraph 42, above, against Defendant Broderson.

WHEREFORE, Plaintiff Lloyd Rahn demands judgment against Defendant Modern Sales and Rental Company and Modern Group Ltd. in an amount in excess of Thirty Thousand ($30,000) Dollars, exclusive of interest and costs, and in excess of any jurisdictional amount requiring compulsory arbitration.

## COUNT V – SUPPLYING DANGEROUS CHATTEL
### Lloyd Rahn v. Modern Group Ltd. and Modern Equipment Sales and Rental Company

50.    Paragraphs 1 through 37, 39 and 41 of this Complaint are incorporated herein by reference.

51.    Defendants Modern Group Ltd. and Modern Equipment Sales and Rental Company supplied the Broderson unit to Baker Refractories, and at the time of Plaintiff's injury knew or had reason to know that the Broderson unit was likely to be dangerous, had no reason to believe that those for whose use the chattel was supplied would realize its dangerous character,

and failed to exercise reasonable care to inform them of this dangerous condition, or of the facts which made it likely to be dangerous.

52.     Further, Defendants Modern Group Ltd. and Modern Equipment Sales and Rental Company, in supplying the dangerous crane for the use of Baker's employees, knew or should have known that it was unlikely that the crane would be made reasonably safe before used by Baker's employees, including Lloyd Rahn.

53.     As a result of Defendants' supplying a dangerous chattel, Plaintiff Lloyd Rahn suffered serious injuries as described above.

WHEREFORE, Plaintiff Lloyd Rahn demands judgment against Defendant Modern Group Ltd. and Modern Equipment Sales and Rental Company in an amount in excess of Thirty Thousand ($30,000) Dollars, exclusive of interest and costs, and in excess of any jurisdictional amount requiring compulsory arbitration.

### COUNT VI – BREACH OF CONTRACT
Lloyd Rahn v. Modern Equipment Sales and
Rental Company, Modern Hilift Equipment Company, and Modern Group Ltd.

54.     Paragraphs 1 through 37 of this Complaint are incorporated herein by reference.

55.     Defendants Modern Group Ltd. and Modern Hilift Company were contractually obliged in 1998, and Defendants Modern Equipment Sales and Rental Company and Modern Group Ltd. were contractually obliged in 1999, to properly inspect the subject Broderson crane.

56.     The inspections are mandated by federal and other provisions of law, for the benefit of those individuals operating or working around the cranes.

57.     The inspections were not properly performed during the years 1998 and 1999, and Modern HiLift Company, Modern Equipment Sales and Rental Company, Modern Group Ltd. therefore breached their contractual arrangement with Baker Refractories.

58.    Plaintiff Lloyd Rahn is a third party beneficiary of said contract.

WHEREFORE, Plaintiff Lloyd Rahn demands judgment against Defendants Modern HiLift Company, Modern Equipment Sales and Rental Company, and Modern Group Ltd. in an amount in excess of Thirty Thousand ($30,000) Dollars, exclusive of interest and costs, and in excess of any jurisdictional amount requiring compulsory arbitration.

## COUNT VII – NEGLIGENCE
### Lloyd Rahn v. Modern Hilift Company,
### Modern Equipment Sales and Rental Company, and Modern Group Ltd.

59.    Paragraphs 1 through 37 of this Complaint are incorporated herein by reference.

60.    All of Plaintiff's damages as herein before related are the direct and proximate result of the negligence of Defendant Modern HiLift Company, Modern Equipment Sales and Rental Company, and Modern Group Ltd. in that they:

   a.    Failed to determine that the subject Broderson crane's anti two-block safety mechanism, leased to Baker Refractories, was severely damaged prior to the subject accident;

   b.    Failed to convey information about the extent of the damage to the anti two-block safety mechanism to Baker Refractories, or the operators of the subject crane;

   c.    Failed to take the damaged unit out of service;

   d.    Failed to fix and repair the damaged unit;

   e.    Failed to contact the manufacturer, Broderson, for advice on whether the unit should be taken out of service and how to fix it; and

   f.    Failed to properly service and maintain the Broderson unit.

WHEREFORE, Plaintiff Lloyd Rahn demands judgment against Defendants Modern HiLift Company, Modern Equipment Sales and Rental Company, and Modern Group Ltd. in an

amount in excess of Thirty Thousand ($30,000) Dollars, exclusive of interest and costs, and in excess of any jurisdictional amount requiring compulsory arbitration.

## COUNT VIII – NEGLIGENCE
### Lloyd Rahn v. Mark Kriner, Aycock, Inc., Magaro, Inc., and Aycock, Inc. and Magaro, Inc. t/d/b/a Aycock-Magaro Constructors Joint Venture

61.     Paragraphs 1 through 37 of this Complaint are incorporated herein by reference.

62.     Mark Kriner was, at the time of Lloyd Rahn's accident, and for at least several days beforehand, employed by Defendant Aycock Inc. and/or Magaro, Inc. and/or Aycock, Inc. and Magaro, Inc. t/d/b/a Aycock-Magaro Constructors Joint Venture, acting within the course and scope of this employment, had actual knowledge of a problem with the anti two-block mechanism on the subject Broderson unit, and therefor undertook to inspect it.

63.     However, his safety check was not performed properly.

64.     In particular, Mark Kriner was negligent in that he:

a.     Failed to properly apprise himself of how the safety mechanism was designed to work;

b.     Assumed that a horn or light that he perceived indicated that the safety mechanism had activated, when in fact it had not;

c.     Failed to properly test the safety mechanism to determine whether it would stop the crane's functioning;

d.     Failed to refer to available written material to determine how the safety mechanism was designed to operate, and thus how to test it; and

e.     Failed to consult with appropriate individuals to determine how the safety mechanism was supposed to work, and thus how to test it.

WHEREFORE, Plaintiff Lloyd Rahn demands judgment against Defendants Mark Kriner, Aycock, Inc., Magaro, Inc., And Aycock, Inc. And Magaro, Inc. t/d/b/a Aycock-Magaro Constructors Joint Venture in an amount in excess of Thirty Thousand ($30,000) Dollars, exclusive of interest and costs, and in excess of any jurisdictional amount requiring compulsory arbitration.

Respectfully submitted,

ANGINO & ROVNER, P.C.

Joseph M. Melillo, Esquire
I.D. No. 26211
4503 N. Front Street
Harrisburg, PA 17110
(717) 238-6791
Counsel for Plaintiff

Date: March 19, 2002

## VERIFICATION

I, **Lloyd Rahn**, Plaintiff, have read the foregoing **PLAINTIFF'S COMPLAINT** and do hereby swear or affirm that the facts set forth in the foregoing are true and correct to the best of my knowledge, information and belief.   I understand that this Verification is made subject to the penalties of 18 Pa.C.S.A. Section 4904, relating to unsworn falsification to authorities.

_____
Witness

_____
Lloyd Rahn

Dated:

## CERTIFICATE OF SERVICE

AND NOW, this 9th day of April, 2002, I, Joseph M. Melillo, Esquire, an employee of Angino & Rovner, P.C., and counsel for Plaintiff, do hereby certify that I have served a true and correct copy of the within Brief via United States mail, first class, postage prepaid at Harrisburg, Pennsylvania, addressed as follows:

Jefferson J. Shipman Esquire
Goldberg, Katzman & Shipman
320E Market Street
P.O. Box 1268
Harrisburg, PA  17108-1268


C. Kent Price, Esquire
THOMAS, THOMAS & HAFER
305 North Front Street
P. O. Box 999
Harrisburg, PA  17108-0999


Daniel M. Dibble, Esquire
Lathrop & Gage Law Office
2345 Grand Boulevard, Suite 2800
Kansas City, MO  64108-2612


Joseph M. Melillo